**FILED**

JUL 25 2008

Clerk, U.S. District and
Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DIANN B. JAMES                           *
5210 Trotters Glen Drive
Upper Marlboro, Maryland 20772           *

    Plaintiff                            *    Case No.:

v.

VERIZON                                       Case: 1:08-cv-01274
1710 H Street, N.W.                           Assigned To : Urbina, Ricardo M.
Washington, DC 20006                          Assign. Date : 7/25/2008
                                              Description: Employ. Discrim.

and

Kenna Ashley
VERIZON
3011 Hungary Spring Rd., 2nd Floor
Richmond, VA 23228

    Defendants

### PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF, AFFIRMATIVE INJUNCTIVE RELIEF, MONEY DAMAGES, AND JURY TRIAL DEMAND

**INTRODUCTION, JURISDICTION AND VENUE**

1.     This is an employment civil rights case involving deprivations of rights made actionable pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et seq.*, the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*

2.     The Plaintiff, Diann B. James, is a citizen of Prince Georges County, Maryland.

3.     Defendant, Verizon, is a company incorporated under the laws of the District of Columbia doing business in the District of Columbia.

4.     This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1332.

5.     Venue is proper pursuant to 28 U.S.C. §§ 1391.

## FACTS

6.  Plaintiff was employed by Verizon Communications ("Verizon") from April, 1997 until her employment was terminated on September 22, 2006.

7.  From the beginning of her employment with Verizon until the year that she was terminated, Plaintiff consistently received above average performance evaluations from her supervisors.

8.  At various times throughout her employment with Verizon, Plaintiff received awards and certificates recognizing her excellent performance and service to Verizon.

9.  Indeed, Plaintiff was offered numerous opportunities to advance and for promotion during her tenure with Verizon. Plaintiff's career goal was to be a vice president for Verizon, and to that end she was promoted at least every two years into positions of increased responsibility

10. In 1997, Plaintiff began her employment with Verizon as a Residential Sales and Service Consultant in Washington, DC.

11. Plaintiff was detailed as a Consultant to an Acting Management role to work on a special project for the Vice President of Sales and Service, Ellen Corcoran. As a result of her excellent performance, Plaintiff was promoted from Consultant to acting 1st level manager in 2001.

12. Plaintiff was recommended by her $2^n$ level manager in the Washington, DC office, Diana Banks to work another detail as an acting 1st level manager for Express Track.

13. During that period Plaintiff applied for and was selected to a Specialist position in Network Operations. In that position, Plaintiff reported to a 2nd Level Manager as well as Ty Stephenson, Vice President of that division.

14. In 2003, Director of Planning, Sherrie Osborne, assigned Plaintiff to the position of Project Manager of a division of Network Operations in Upstate New York. At the time of

2

assignment, the project was six months behind schedule. Ms. Osborne advised Plaintiff that she was given the assignment because of her excellent communications skills and the belief that her communication skills would be the key to her being successful as a project manager. Within six weeks of the assignment, project personnel were able to eliminate an existing backlog, and within two months completed the project a week ahead of schedule. This achievement was properly captured in Plaintiff's 2003 Year-End Performance Assessment for that year.

15. In 2004, shortly after the New York project ended, Plaintiff applied for a 2nd level management opportunity in the EEO compliance division.

16. As a former Human Resources director and graduate of Cornell University's New York State School of Industrial and Labor Relations EEO/AA program and a certified EEO Specialist, Plaintiff hoped this would be a good fit for her qualifications.

17. At the time of her application, most of the managers, directors, and vice presidents in the EEO Compliance division were not certified and had no formal background training or education in EEO Compliance prior to joining the division. However, unlike the majority of the investigators in EEO Compliance, Plaintiff was required to appear before a panel interview with 2nd level managers and the director in order to be considered for the position.

18. Following the panel interview, Plaintiff was hired as an EEO investigator.

19. After only nine (9) months in the position, and having responsibility for the states of Pennsylvania and Delaware, Plaintiff was asked to train a new investigator, Wanda Jenkins.

20. After training Ms. Jenkins, Plaintiff was re-assigned and assumed investigative responsibility for Washington, DC and the states of Maryland, Virginia, and West Virginia (the "Potomac Region"). This territorial assignment was modified to Washington, DC and Maryland.

21. Despite being a new investigator, Plaintiff's 2004 Year-End Performance

3

employee in the EEO Compliance division. No White EEO Officers were similarly "shadowed" by Ms. Ashley during this period.

59. Kenna Ashley and Executive Director Catherine Carney, another White female challenged Plaintiff's recommendations for termination of White employees, but had no problem with recommendations for the termination of African American employees. Ms. Ashley wanted to involve Plaintiff, an African American female in assisting her in getting incriminating information about African American executives at Verizon. She also made a statement on a conference call that she was going after another African American female. Plaintiff believes Ms. Ashley attempted to use her as a shield to her actions, as she tried to use the new African American Director, Tammy Jeffers as a shield in going after Plaintiff.

60. Kenna Ashley required Plaintiff to do tasks that no White employee was asked to do. The tasks increased Plaintiff's workload, and were believed to be an attempt by Ms. Ashley to try to interfere with Plaintiff's ability to keep up assignments.

61. Ms. Ashley allowed a White employee to count email investigations to include counting recipients and copied parties as individual cases, while Plaintiff was denied same. This allowed the White employee to look like she handled a lot more cases then Plaintiff, and it allowed her to get a significantly higher bonus payout.

62. Kenna Ashley frequently interrupted Plaintiff during her meetings, but was more than courteous to White employees.

63. Kenna Ashley denied Plaintiff the opportunity to attend a seminar for women in management, which is a predominantly White event. This seminar was recommended to Plaintiff by a co-worker, and it was relative to her roll as a manager and her goal of becoming a corporate executive. White employees were allowed to attend that seminar and

9

Assessment, met and even exceeded Verizon's reasonable business expectations.

22.   In her 2004 Year-End Performance Assessment, Plaintiff's communications was deemed "effective" and she was commended for developing methods of appropriately managing her caseload. Most importantly, her Position Statements were evaluated as "typically thorough and effective."

23.   In 2005, the EEO Compliance division was reorganized.  As part of the reorganization, Executive Director, Catherine Carney, a White female located in the Boston, MA office, selected four White managers to perform oversight of the EEO team, despite other tenured and qualified managers of color.

24.   Following the reorganization, Plaintiff's first temporary manager was Amy Thornton, a White female located in the Dallas, TX office.

25.   Ms. Thornton never expressed to Plaintiff that she had any concerns or disapproved of Plaintiff's performance, communications, or work product. Further, Ms. Thornton never provided Plaintiff with any written documentation suggesting that she was performing below Verizon's reasonable business expectations.

26.   Plaintiff's second temporary manager was Mary Alderman, a White female, located in the Richmond, VA office.

27.   Ms. Alderman never expressed to Plaintiff that she had any concerns or disapproved of Plaintiff's performance, communications, or work product. Further, Ms. Alderman never provided Plaintiff with any written documentation suggesting that she was performing below Verizon's reasonable business expectations.

28.   In early 2006, Kenna Ashley, a White female, located in Tampa, FL / Richmond, VA became Plaintiff's forth and final manager in the EEO Compliance division. Ms. Ashley supervised Plaintiff, a nine year employee, for only 8 months.

29. Ms. Ashley did not supervise Plaintiff in 2005 as she was absent on maternity leave. Nonetheless, early in 2006, Ms. Ashley conducted Plaintiff's 2005 Year-End Performance Assessment.

30. In light of Ms. Ashley's unfamiliarity with Plaintiff's work or performance, Plaintiff submitted a self-assessment of her achievements for the year, her training, and goals. Plaintiff advised Ms. Ashley of her career goal to be a vice president for Verizon.

31. Ms. Ashley disregarded Plaintiff's self-assessment.

32. Plaintiff had to explain to Ms. Ashley that she could not have input to her 2005 assessment, but only those who had actually supervised her. As of March 2006, Plaintiff was evaluated as meeting and even exceeding Verizon's performance expectations. A rating of meeting and/or exceeding expectations is generally where most Verizon employees fall on the performance rating scale. It is not a marginal performance rating. The evaluation acknowledged that Plaintiff increased her output by 66% in 2005. Further, it acknowledged that Plaintiff's output represented the "fifth highest [in number of cases processed]."

33. Overall, Plaintiff was rated as "performing" which means that she "sustained performance meeting objectives, requirements and expectations of the position and periodically exceeded them."

34. Despite this positive performance evaluation, Ms. Ashley requested to "shadow" Plaintiff to review her work activities.

35. Upon information and belief, Ms. Ashley also requested to "shadow" the work activities of Wanda Jenkins, another African American female.

36. Upon information and belief, Ms. Ashley did not request and did not "shadow" any White investigators during this time.

37. During this "shadow" period, Plaintiff never received any indication from Ms.

5

Ashley that she was not performing as expected or required of an investigator. Plaintiff never received any written warning, written reprimands or written notifications suggesting that she was performing below Verizon's reasonable business expectations.

38. Three months after Plaintiff's positive 2005 Year-End Performance Assessment, and subsequent bonus, Ms. Ashley, Plaintiff's supervisor of six months and Tammy Jeffers, an African-American Female, and Director, new to EEO Compliance, met to discuss Plaintiff's mid-year review. With no prior warning, Ms. Ashley and Director Jeffers for the first time presented Plaintiff with a Performance Improvement Plan. ("PIP").

39. A PIP is used by management as a tool to assist poor performing employees to improve in areas of concern. A PIP is usually employed when deficiencies discussed with an employee during the mid-year or end of year review meetings have not been improved upon within a reasonable time. Managers are responsible for assisting employees by providing coaching, training, and oral and written feed back on performance progress.

40. This PIP purported to address two areas of concern regarding Plaintiff's performance: judgment in managing and analyzing her caseload and writing skills.

41. Plaintiff was confused by this PIP as for two years in the position she was never provided any oral or written disciplinary action prior to receiving this PIP in 2006. After being placed on the PIP, Plaintiff requested that Ms. Ashley provide her with written progression reports. This was not done.

42. Plaintiff had been commended by her previous Manager, Gregory Miles, now Ethics Director, for developing effective methods for case management.

43. Plaintiff was not behind in her cases and had achieved "no cause finding" results from local, state, and federal agencies for all external cases handled.

44. Plaintiff had developed an excellent rapport with management and staff in the

jurisdictions she served, with no significant or unusual union action.

45. Plaintiff had completed all internal and external training requirements, with exception of one, due to a conflict in time with an investigation. Plaintiff rescheduled training.

46. Also, the PIP directly contradicted the written evaluations of supervisors throughout the years, but certainly the evaluations of supervisors personally familiar with Plaintiff's work.

47. Also, Plaintiff served as the Communications Single Point of Contact (SPOC) for the Network Operation Planning organization and she was selected to be the editor of their new newsletter. In fact, Plaintiff successfully completed all high level internal communications training courses offered by Verizon. This can be verified by Verizon's training data base - NetLearn. Additionally, in 2003 Plaintiff successfully completed a communications course at Columbia Union College.

48. In 2006, Plaintiff was commended by Director, Victoria Boston for her outstanding preparation, knowledge and presentation when Plaintiff substituted at the last minute for Ms. Ashley in an annual managers' meeting.

49. Throughout 2006, Ms. Ashley was aware that Plaintiff was undergoing tests and treatment for her vision. Ms. Ashley was well aware that Plaintiff was unable to see her computer or perform her work without difficulty.

50. Plaintiff applied for and was notified of her eligibility for FMLA leave on September 13, 2006.

51. Plaintiff was approved for FMLA leave on October 2, 2006. Plaintiff's FMLA leave was made retroactive to September 13, 2006.

52. Although Plaintiff was out on medically approved leave, protected by the FMLA, Ms. Ashley ordered Plaintiff to appear at work on September 22, 2006 for the sole purpose of

terminating Plaintiff.

53. These actions were malicious and deliberately intended to embarrass and harass Plaintiff. Furthermore, they were in violation of and in retaliation for Plaintiff's exercise of her rights under the Family Medical Leave Act and the Americans with Disabilities Act.

## COUNT ONE

## AMERICANS WITH DISABILITIES ACT

54. Plaintiff fully incorporates paragraphs 1-53 as set forth above.

55. Plaintiff was a qualified EEO compliance officer who consistently met and/or exceeded Verizon's reasonable business expectations for the EEO Compliance division.

56. Verizon was aware that Plaintiff suffered a physical impairment that substantially limited Plaintiff's major life activities of seeing, driving, working on a computer and other major life activities.

57. Despite Plaintiff's request for an accommodation in the form of leave, Verizon terminated Plaintiff from her job without just cause because of her disability.

## COUNT TWO

## RACE DISCRIMINATION

58. Plaintiff fully incorporates paragraphs 1-57 as set forth above, and states that Plaintiff is an African American female who was qualified for her job as EEO compliance officer. As evidenced by her Year-End Performance Assessments up to and including the Assessment provided in 2005, Plaintiff met and even exceeded Verizon's reasonable business expectations.

59. Despite Plaintiff's performance, Verizon gave Plaintiff a bonus substantially less than her White counterparts. Further, Plaintiff's supervisor, Kenna Ashley, a White female, sought to "shadow" the work activities of Plaintiff and another African American

8

others of choosing, at Verizon's expense. Plaintiff was told by Ms. Ashley if she wanted to attend the CITE conference, which is a predominantly African American event, she could have the time off to attend, but she would have to pay for it herself.

65. While it was common place for White employees to discuss vacation plans on team calls, so that adequate coverage could be arranged, when Plaintiff attempted to do so, she was reprimanded by Ms. Ashley and told she needed to discuss her vacation plans with her in private.

66. A White employee was advised by Kenna Ashley that she could purchase a Verizon cell phone for use at Verizon's expense. Kenna Ashley never advised Plaintiff that she could. After finding out about the arrangement, Plaintiff had to request that she be allowed to purchase a phone.

67. While on the PIP, Plaintiff was never provided with any improvement training, as promised. As a matter of fact, the training that Plaintiff was scheduled for took place after her termination, and Plaintiff had to pay out-of- pocket for that training which she never took. The PIP training was charged to Plaintiff's corporate credit card for which she was never reimbursed. Ms. Ashley was aware of this.

68. White employees who performed below reasonable business expectations on a PIP were notified of deficiencies during the period, and were allowed to work to the end of the year when they could be made part of a reduction in force with severance, or they were allowed to retire, resign, or transfer to other divisions within Verizon. Plaintiff was not even given an exit interview to include COBRA information. She was asked for her keys, pass, and credit card and told to leave the building in a less than 2 minute meeting.

69. In short, Verizon treated Plaintiff differently in terms and conditions of her employment

in comparison to other White similarly situated employees.

70.     Finally, Plaintiff was terminated from her job after nine years of progression in employment without just cause because of her race.

## COUNT THREE

## FAMILY MEDICAL LEAVE ACT

71.     Plaintiff fully incorporates paragraphs 1-70 as set forth above, and states that in early 2006, Plaintiff began to suffer from a serious health condition.

72.     Throughout 2006, Verizon was aware that Plaintiff suffered a serious health condition that affected Plaintiff's ability to perform the essential functions of her position, and in particular, her ability to work at her computer.

73.     Plaintiff was diagnosed with Uveitis in early 2006. Uveitis specifically refers to inflammation of the middle layer of the eye, termed the "uvea" but in common usage may refer to any inflammatory process involving the interior of the eye, with inflammation specifically of the uvea termed iridocyclitis. Uveitis is estimated to be responsible for approximately 10% of the blindness in the United States. Uveitis requires an urgent referral and thorough examination by an ophthalmologist, along with urgent treatment to control the inflammation.

74.     Plaintiff advised Kenna Ashley of her condition, when she frequently and inappropriately inquired.

75.     Plaintiff attempted to work until she could no longer see well enough to drive.

76.     Plaintiff applied for and was approved for FMLA on or about September 13, 2006

77.     Despite this, Kenna Ashley ordered Plaintiff to appear at work on September 22, 2006 to be terminated because of her serious health condition.

## COUNT FOUR

## RACIAL AND DISABILITY

11

## DISCRIMINATION IN VIOLATION OF THE
## DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

78.     Plaintiff incorporates Paragraphs 1-70 of this Complaint, as if fully alleged herein.

79.     Defendant's discriminatory and disparate treatment of Plaintiff on account of her race and disability constitutes a violation of the District of Columbia Human Rights Act.

80.     Defendant engaged in the above described conduct against Plaintiff with malice and callous indifference to Plaintiff's rights under the District of Columbia Human Rights Act.

WHEREFORE, Plaintiff prays for Judgment:

1.     Declaring the rights of the Plaintiff with respect to her employment.

2.     Issuing an award of back pay and benefits; in an amount to be determined, but in any event no less than $1,000,000.00;

3.     Issuing an award to compensate for all other non-economic damages incurred by the Plaintiff, including but not limited to, the humiliation, stress, mental anguish, embarrassment, and loss of employment suffered by the Plaintiff, in an amount no less than $500,000.00.

4.     Awarding Plaintiff her costs and reasonable attorney's fees in this action.

5.     Granting punitive damages against Verizon in the amount of $5,000,000.00;

6.     Granting such other and further relief as this Court may deem just and proper.

                                        Respectfully submitted,

                                        /s/_____
                                        Diann B. James, Plaintiff
                                        5210 Trotters Glen Drive
                                        Upper Marlboro, Maryland 20772
                                        (301)627-1204

## DEMAND FOR JURY TRIAL

The Plaintiff, by her undersigned attorney, hereby demands a jury trial as to all issues triable by a jury.

Respectfully submitted,

/s/ Diann B. James
Diann B. James, Plaintiff
5210 Trotters Glen Drive
Upper Marlboro, Maryland 20772
(301)627-1204

EEOC Form 161 (2/08)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Dianr. B. James<br>5210 Trotters Glen Drive<br>Upper Marlboro, MD 20772 | From: Baltimore Field Office<br>City Cresent Building<br>10 South Howard Street – 3rd Floor<br>Baltimore, MD 21201 |

☐   On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 531-2007-00447 | Lisa Clinton Jones,<br>Investigator | (410) 209-2749 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Gerald S. Kiel* (signature)

Gerald S. Kiel,
Director

APR 29 2008

Enclosures(s)

*(Date Mailed)*

cc:
Ashley Kenna
Executive Director
VERIZON
Ofc. of Staffing & Compliance
3011 Hungary Spring Rd. 2nd Fl
Richmond, VA 23228

Deborah K. St. Lawrence
Brown & Sheehan, LLP
One South Street – 23rd Floor
Baltimore, MD 21202

**08 1274**

**FILED**

JUL 25 2008

Clerk, U.S. District and
Bankruptcy Courts

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Diann B. James

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Prince George's
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

No attorney assigned - Diann B. James, Plaintiff
5210 Trotters Glen Drive
Upper Marlboro, MD 20772
301 627-1204

## DEFENDANTS

Verizon
Kenna Ashley

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) _____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:08-cv-01274
Assigned To : Urbina, Ricardo M.
Assign. Date : 7/25/2008
Description: Employ. Discrim.

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊙ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

②

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U.S.C. 2000 Wrongfully Termination

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 5,000,000.00    Check YES only if demanded in complaint    JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐  NO ☒  If yes, please complete related case form.

DATE 07/25/2008    SIGNATURE OF ATTORNEY OF RECORD [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.